VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 25-ENV-00004



| 1417 Joes Brook Road CU Permit Application | MERITS DECISION |
| --- | --- |

This is an appeal of a decision by the Town of Barnet Planning/Zoning Board (Board) dated December 17, 2024, denying Grace Gershuny's (Applicant) zoning permit application for an accessory dwelling unit with attached garage on the property located at 1417 Joes Brook Road in Barnet, Vermont (the Property). Applicant timely appealed the Board's decision to this Court.

The Court held a merits hearing in this matter on June 5, 2025 via the WebEx platform. Applicant appeared and was self-represented. Neither the Town, nor any other Interested Person, entered an appearance in this case.[1]

### Statement of Questions

Applicant filed an Amended Statement of Questions on April 21, 2025, presenting three Questions for this Court's review. Those Questions may be summarized as follows:

(1) Whether the application conforms with, and should be construed in accordance with, the statutory policy in 24 V.S.A. § 4412 that provides for the equal treatment of housing and required provisions for affordable housing, even in the absence of express provisions related thereto in the zoning regulations?

(2) Whether the application complies with Section 307.01 of the Barnet Zoning Bylaws?

(3) Whether the application can be approved with conditions to protect agricultural and forestry purposes?

---

[1] The Court provided notice of this appeal to the Town of Barnet by letter dated January 16, 2025.

## Findings of Fact

1. In September 2024, Grace Gershuny (Applicant) submitted a zoning application to construct an accessory dwelling unit (ADU) with an attached garage on the property that she owns located at 1417 Joes Brook Road in Barnet, Vermont (the Property).

2. The Property is in the Agricultural District, as designated by the Town of Barnet Zoning Bylaws (Bylaws), adopted July 23, 2018. Exhibit D.

3. The Property is approximately 10 acres in size and is a portion of a 37-acre parcel that was once owned by Applicant's (former) mother-in-law. The minimum lot size in the Agricultural District is 3 acres.

4. The Property is generally a sloping lot with a small amount of prime agricultural soil. Approximately seven acres of the Property is open land (including one acre that has been cleared for a building site) and the remainder is wooded.

5. The Property is generally rural and includes an apple orchard, a pond, and a hayfield.

6. Applicant is developing plans to restore cleared areas for agricultural projects, including by using sheep to clear the land.

7. The Property currently contains an approximately 2,700 square foot single family dwelling, which is Applicant's primary residence, as well as a detached garage.[2]

8. Applicant intends to construct a 1,300 square foot ADU, on a concrete slab, and a 400 square foot attached garage.

9. Applicant intends to move into the ADU and sell or rent the primary residence as affordable housing for a younger family.

10. The project will not adversely affect the capacity of existing and planned community facilities and will instead have a positive impact by creating new housing for the Town.

11. The Property is surrounded by other homestead properties, as well as an organic farm and gravel pit operation. Neighbors do not oppose, and are generally supportive of, Applicant's plans.

12. The proposed building site is not suitable for agricultural use.

13. The proposed ADU will enhance the character of the area by making it possible for Applicant to stay on the land (i.e., "age in place") so that she can ensure that the land is maintained for the purposes of agriculture and forestry.

---

[2] Applicant also hopes to construct a barn where an equipment shed/sawmill is now located. However, that is not part of this application.

14. Applicant has co-founded the Cooperation Vermont Community Land Trust and is in the process of donating the Property to that organization, while retaining ownership over the buildings and improvements.

15. Applicant intends to preserve the Property for forestry and food production.

16. Applicant has over 50 years of experience in the field of organic agriculture and soil science. She has written multiple books on these subjects, has taught courses on soils, ecological soil management, and food systems at local colleges, and is passionate about environmental sustainability.

17. The proposed project will enhance the value of the area, will maintain open land, and will preserve the remaining land for agroforestry.

18. The Property is accessed by a private driveway located off Joes Brook Road. The proposed project will utilize the existing driveway, a portion of which is shared with a neighbor.

19. The project will generate one additional vehicle trip to and from the local roadway system.

20. Joes Brook Road is a partially paved Town highway which serves many different uses, including logging trucks and gravel extraction operations.

21. The proposed project will not adversely affect traffic on roads and highways.

22. The proposed project will not adversely affect any other bylaws in the Town.

23. Applicant intends to make the ADU net-zero by installing solar panels, heat pumps, and a wood burning stove.

24. The proposed project will not have an adverse effect on the utilization of renewable energy resources.

25. The ADU will be served by an existing, shared water supply (drilled well), and Applicant will install a new septic tank.

26. There is an existing leach field which has sufficient capacity to accommodate the ADU.

27. The proposed project has side setbacks of 160 feet and 300 feet, a rear setback of 350 feet, and a setback from the right of way of over 400 feet.

28. The proposed project will not cause any detrimental glare, lights, or reflection.

29. The proposed project will not create fire, explosive, or safety hazards.

30. The proposed project will not cause objectionable odors or the emission of air pollution.

31. The proposed project will not generate excessive noise.

32. On December 17, 2024, the Barnet Zoning/Planning Board (Board) denied Applicant's application on the grounds that it would adversely affect the character of the Agricultural District.

3

33. The application includes five proposed conditions to conform the project to the requirements of the Town's general conditional use criteria.

**Discussion**

Chapter 117 of Title 24, the State's Planning and Development Act, requires that certain land development provisions "shall apply" in every municipality." 24 V.S.A. § 4412. Among these provisions is 24 V.S.A. § 4412(1)(E), which provides, in part, that "no bylaw shall have the effect of excluding as a permitted use one accessory dwelling unit that is located within or appurtenant to a single-family dwelling on an owner-occupied lot." Under 24 V.S.A. § 4303(38), "accessory dwelling unit" is defined to mean "a distinct unit that is clearly subordinate to a single-family dwelling and has facilities and provisions for independent living, including sleeping, food preparation, and sanitation, provided there is compliance with all the following: (A) the property has sufficient wastewater capacity; and (B) the unit does not exceed 30 percent of the total habitable floor area of the single-family dwelling or 900 square feet, whichever is greater." While the requirements of § 4412(1)(E) apply in every municipality, those requirements establish a floor and not a ceiling — a municipality may adopt a bylaw provision that is less restrictive of accessory dwelling units than provided in Chapter 117. 24 V.S.A. § 4412(1)(F).

The Town of Barnet's Zoning Bylaws do not expressly address "accessory dwelling units," as authorized and defined in Chapter 117. Nonetheless, those provisions are included in Barnet's Zoning Bylaws by operation of law. 24 V.S.A. § 4412. The Court will, therefore, construe Barnet's Zoning Bylaws in a manner that incorporates the requirements of § 4412 and, as necessary, reconciles Bylaw provisions so that they are consistent with § 4412(1)(E) and (F) (and § 4303(38)).

Under the Town's Bylaws, Table 305.01, "[a]ccessory apartments" are an allowed use within the Agricultural District in which the Property is located. While the Town's definition of accessory apartment differs slightly from the statutory definition of accessory dwelling unit (e.g., by omitting the "or 900 square feet, whichever is greater" language), the Bylaws are also somewhat more expansive/permissive than the statute. Specifically, Table 305.01 states that "[u]ses that exceed thresholds established in Section 602 "Definitions" shall require conditional use review." Thus, to be a permitted use, an accessory apartment must not exceed 30 percent of the total habitable floor area of the single-family dwelling. Bylaws § 602. However, an accessory apartment, as defined in Bylaws § 602, that exceeds the 30% threshold may be allowed as a conditional use in the Agricultural District.

4

Bylaws, Table § 305.01. Accordingly, even though Applicant's project exceeds the definitional threshold for an ADU, it may still be authorized as a conditional use under the Bylaws.

We start by addressing the basis for the Board's denial, which was that the proposed project will have an adverse effect on the character of the Agricultural District.[3] When analyzing the character of the area for zoning purposes, we analyze both the character of the area as defined by the district in which the proposed development is located, and the specifically stated policies and/or standards in the municipal plan and also the existing uses in the area. See In re Hettinger Conditional Use & Act 250 Approvals, Nos. 130-11-18 Vtec, 44-3-19 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div. Nov. 20, 2019) (Walsh), J.) (citing In re Willowell Found. CU, No. 142-10-12 Vtec, slip op. at 3, 22 (Vt. Super. Ct. Envtl. Div. July 10, 2014) (Walsh, J.) *aff'd* 2016 VT 12).

The stated purpose of the Agricultural District is "to protect lands with an economic capability for agriculture and which are now essentially undeveloped except for uses associated with agriculture or forestry." Bylaws § 305.01. Applicant's proposed project will not have an undue adverse effect on these goals. The footprint of the ADU and garage are minimal and are located on a piece of land which contains untillable soil and is not suitable for agricultural use. Applicant is in the process of donating the remainder of the Property to a land trust so that it may be maintained for agroforestry use in perpetuity. This is precisely the type of land stewardship that the Town should encourage.

Additionally, the Property is surrounded by other homesteads and an organic farm. Applicant's neighbors are generally supportive of the application. Accordingly, the proposed project fits well within the scope of existing uses within the area and will not have an undue adverse impact on the character of the area.[4]

We now turn to the remaining conditional use criteria. The project will not have an undue adverse effect on the capacity of existing and planned community facilities nor traffic on nearby roads and highways. The project will not have an undue adverse effect on other Town bylaws or the utilization of renewable energy resources. The project complies with all lot size and setback requirements and will be served by a new septic tank and existing water supply. The impacts of this

---

[3] We note that the Board, through the Bylaws, applied the wrong test for conditional use review. The test is not whether a project will have an adverse effect, but whether it will have an <u>undue</u> adverse effect. 24 V.S.A. § 4414(3)(A); Andreen CU Permit, No. 12-2-17 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. March 7, 2018)( Walsh, J.) (explaining the updated statutory standard).

[4] Because the Town did not participate in this appeal, we are unaware of any specifically stated policies or standards within the municipal plan which would support denying a permit based on character of the area. Rather, Applicant points to several provisions within the plan which encourage affordable housing and preservation of land for food production — the same goals which Applicant seeks to achieve through her application. Exhibit E.

project are minimal such that it complies with all of the relevant conditional use review criteria, both general and specific. Bylaws, §§ 307.01–307.02.

## Conclusion

For the foregoing reasons, we answer Applicant's Questions 1, 2, and 3 in the affirmative. The application conforms with all statutory and local standards and will not have an undue adverse impact on the character of the Agricultural District. The application is hereby **APPROVED** with the conditions proposed by the Applicant's Exhibit G, which are reasonable and appropriate for a project of this nature:

1. The [project] site must include sufficient water and septic capacity to accommodate the stand-alone [accessory] dwelling [unit].

2. The [accessory] dwelling [unit] must not be sited on tillable agricultural land.

3. The new [accessory] dwelling must be no more than 50% of the size of the current dwelling [2,700 sq. ft./2 = 1,350 s.f.].

4. Construction must incorporate energy conservation methods and materials to the extent feasible.

5. Any site disturbance from construction must be restored to maintain soil cover and prevent erosion.

We encourage Applicant to continue her efforts at achieving a net-zero energy, age-in-place household, surrounded by productive and sustainable agricultural/forest land, while providing affordable housing opportunities for others. We **REMAND** the application to the Town for the ministerial act of issuing a permit.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed on June 6, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division